UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LISA R. MEDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　No. 1:18 CV 211 CDP |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Lisa R. Medley brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I must affirm the decision.

## **Procedural History**

On February 10, 2017, the Social Security Administration denied Medley's applications for DIB and SSI, in which she claimed she became disabled on

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as defendant in this action.

December 2, 2016, because of severe sleep apnea, diabetes, severe back issues, cardiology problems, severe depression, severe anxiety, high blood pressure, high cholesterol, severe falling episodes, and severe memory loss. At Medley's request, a hearing was held before an administrative law judge (ALJ) on April 17, 2018, at which Medley and a vocational expert testified. On May 14, 2018, the ALJ denied Medley's claims for benefits, finding the vocational expert's testimony to support a finding that Medley could perform work that exists in significant numbers in the national economy. On July 19, 2018, the Appeals Council denied Medley's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Medley claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Medley argues that the ALJ erred in failing to consider her neuropathy, syncope, and vertigo as severe impairments and thus failed to consider the effects of these impairments in determining her residual functional capacity (RFC). Medley also claims that the ALJ improperly evaluated her treating physician's medical opinion. Medley asks that I reverse the ALJ's decision and remand the matter to the Commissioner for further consideration.

For the reasons that follow, the ALJ did not err in his determination.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Medley's recitation of facts set forth in her Statement of Uncontroverted Facts (ECF 17) and note that they are generally admitted by the Commissioner with some clarification. (ECF 23-1.) I also adopt the Commissioner's Statement of Additional Material Facts (ECF 23-2), to which Medley has not responded. These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.  <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Medley must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity

that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2018); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets

this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.   The ALJ's Decision

The ALJ found that Medley met the requirements of the Social Security Act through March 31, 2022, and that she had not engaged in substantial gainful activity since December 2, 2016, the alleged onset date of disability. The ALJ found that Medley's coronary artery disease, recurrent kidney stones, depression, and anxiety/post-traumatic stress disorder were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-21.) The ALJ found that Medley's hypertension, hyperlipidemia, diabetes mellitus, migraines, and obesity, "as well as any other conditions diagnosed but not mentioned in the severe impairments," were not severe. (Tr. 21.) The ALJ also found that the record failed to establish that sleep apnea, back and knee issues, falling episodes, loss of memory, neuropathy, and vertigo were medically determinable impairments. (*Id.*)

The ALJ determined that Medley had the RFC to perform light work, except that she was limited to

> no climbing ladders, ropes or scaffolds, and the remaining posturals are at occasional and balance is at occasional. She needs to avoid all exposure to operation of unprotected moving machinery, unprotected heights, and use of hazardous machinery, and all exposure to extreme

> temperatures. She is capable [of] simple, routine tasks with only occasional decision-making or changes in the work setting and occasional interaction with the public and coworkers.

(Tr. 23.) The ALJ determined that this RFC precluded Medley from performing her past relevant work as a hospital clerk, rental facility clerk, pointer, or fast food manager. (Tr. 29.)

Considering Medley's RFC, age, education, and work experience, the ALJ found that vocational expert testimony supported a conclusion that Medley could perform work as it exists in significant numbers in the national economy, and specifically, as a price tagger, officer cleaner, and photo copy machine operator. (Tr. 30.) The ALJ thus found Medley not to be under a disability from December 2, 2016, through the date of the decision. (Tr. 31.)

C. <u>Step 2 Analysis</u>

Only medically determinable impairments can provide a basis for disability. A "medically determinable impairment" is an impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. . . . [A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. A claimant's statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521,

416.921. Only after a claimant establishes that she has a medically determinable impairment does the Commissioner determine whether the impairment(s) is severe. 20 C.F.R. §§ 404.1521, 416.921.

At Step 2 of the sequential analysis here, the ALJ found that Medley's claimed neuropathy, syncope, and vertigo were not medically determinable impairments. (Tr. 21.) Medley claims that the ALJ erred and, further, should have considered these impairments to be severe. For the following reasons, the ALJ did not err in his Step 2 analysis of these impairments.

Treating physician Dr. Raul Borrego diagnosed Medley with neuropathy on February 13, 2017, in response to Medley's complaints of numbness in her feet. Medley reported that she experienced a pins-and-needles sensation when sitting for a while, and that the sensation would go away within minutes after standing up and walking. While Dr. Borrego's notes show that a monofilament exam performed that date yielded abnormal results, there is no indication that he prescribed any medication or treatment for the condition at that time. Nor did he conduct or order any follow up testing or examination for the condition, despite noting that nerve conduction studies and an x-ray of the lumbar spine may be warranted. (Tr. 494-505.) Notably, another monofilament exam conducted one year later in February 2018 yielded normal results. Sensation examination of both feet at that time likewise yielded normal results. This treatment note contains no diagnosis of

neuropathy nor any prescription for medication or other treatment for the condition. (Tr. 480-84.)[2] In addition, treatment notes throughout the record from various sources show that Medley never exhibited any sensory deficit upon neurological examination, and specific notes in the record show that examination of the extremities showed intact NVT (neurological, vascular, tendon). (*See*, *e.g.*, Tr. 564, 589, 614.) Finally, documented summaries of Medley's medical history from May 2016 through March 2018 do not contain any diagnosed condition of neuropathy.

Without objective medical evidence establishing the existence of this impairment, Dr. Borrego's February 2017 diagnosis of neuropathy, Medley's subjective statements of symptoms, and Dr. Borrego's April 2018 medical source statement that includes a neuropathy diagnosis are insufficient to establish a medically determinable impairment. 20 C.F.R. §§ 404.1521, 416.921. While the record includes a note that a monofilament test in February 2017 was abnormal, no treatment was given and no follow up testing was performed except for a repeat monofilament test one year later that yielded normal results. Given the general absence of neuropathic complaints, the normal neurological examinations, and the lack of sensory deficits, the ALJ did not err in finding that Medley's claimed

---

[2] Although Dr. Borrego's treatment notes are silent in this regard, Medley testified at the April 2018 hearing that she takes Gabapentin for the condition. (Tr. 84-85.) She also testified that she has had numbness and tingling in her feet for only four months. (Tr. 61.)

neuropathy was not a medically determinable impairment.

Even if Medley's claimed neuropathy is considered a medically determinable impairment, it nevertheless does not rise to the level of a severe impairment. A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities and has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c) and 404.1509; §§ 416.920(a)(4)(ii), (c) and 416.909. There is no evidence in the record showing that the condition meets the twelve-month durational requirement. Nor is there any objective medical evidence indicating that the condition resulted in any significant functional limitations. The ALJ did not err in his Step 2 analysis of Medley's claimed neuropathy.

The same is true for Medley's claimed impairment of syncope.[3] Medley's one syncopal episode occurred on March 9, 2018, after she had been sick for one week with nausea and vomiting. Hospital physicians opined that the event may have been caused by orthostatic hypotension due to nausea, vomiting, and dehydration.[4] (Tr. 516, 530.) Laboratory tests and an MRI of the brain showed no abnormalities associated with the condition. (Tr. 516-17.) This single syncopal

---

[3] Syncope is a temporary loss of consciousness. *Fainting, Also called: Syncope*, https://medlineplus.gov/fainting.html (last updated June 3, 2019).

[4] Orthostatic hypotension is low blood pressure caused by a sudden change in body position, such shifting from lying down to standing. *Low blood pressure*, https://medlineplus.gov/ency/article/007278.htm (last updated July 31, 2019).

event with no objective medical evidence of a physiological abnormality is insufficient to establish a medically determinable impairment, let alone a severe impairment. The ALJ did not err in his determination.

Finally, the record fails to establish that Medley's claimed vertigo is a medically determinable impairment. Medley first complained of dizziness on May 16, 2016, and reported to Dr. Andrew Godbey that she had fallen two days prior. Dr. Godbey diagnosed vertigo based on Medley's report and ordered an MRI of the brain. The MRI, however, showed no abnormality associated with the condition. (Tr. 360-62, 363.) On December 6, 2016, Medley reported to Dr. Godbey that she recently lost her job because of repeated episodes of falling at work.[5] Dr. Godbey opined that Medley's vertigo was likely a migraine variant, and he ordered additional testing to rule out peripheral vertigo and to establish the etiology of Medley's dizziness. (Tr. 363-65.) Medley never followed up with the testing, however, nor did she return to Dr. Godbey for further evaluation or treatment. (*See* Tr. 429.)

In May 2017, Medley reported to Dr. Borrego that she had not fallen in the past year. Her reported unsteadiness on her feet at the time was attributed to her taking too much of the wrong medication and not to an independent medical

---

[5] Medley testified at the hearing that she lost her job because she took frequent bathroom breaks. (Tr. 48, 52.) Medley reported to Dr. Borrego that she lost her job because of her poor memory. (Tr. 457.)

condition. She was considered to be at no risk for falls. (Tr. 486-88.) In January and February 2018, Medley reported that she had not fallen within the previous six months. (*E.g.*, Tr. 446-48, 460-62.) To the extent Medley reported experiencing vertigo symptoms before her syncope episode on March 9, 2018, it was opined that the symptoms were consistent with benign paroxysmal positional vertigo (BPPV),[6] but workup was unremarkable. (Tr. 531.) During a return visit on March 18, Medley had no complaints of vertigo symptoms. (Tr. 562.) Similarly, during a return visit on March 29, Medley reported having no dizziness. (Tr. 610, 613.)

Although the record includes an early diagnosis of vertigo from Dr. Godbey as well as a diagnosis in relation to her syncopal episode, a mere diagnosis without objective medical evidence of the condition is insufficient to establish a medically determinable impairment. Given this lack of objective evidence, Medley's subjective statements of symptoms and Dr. Borrego's April 2018 medical source statement that includes a diagnosis of vertigo are likewise insufficient to establish a medically determinable impairment. 20 C.F.R. §§ 404.1521, 416.921. Nor can it be said that the condition rises to the level of a severe impairment. There is no objective medical evidence in the record indicating that the condition resulted in any significant functional limitations having a duration of at least twelve months.

---

[6] BPPV causes brief episodes of mild to intense dizziness and is usually triggered by specific changes in the position of the head, such as tipping the head up or down, lying down, or turning over or sitting up in bed. *Benign paroxysmal positional vertigo*, https://www.mayoclinic.org/diseases-conditions/vertigo/symptoms-causes/syc-20370055 (June 30, 2018).

The ALJ did not err in his Step 2 analysis of Medley's claimed vertigo.

Because the ALJ did not err in his Step 2 analysis of Medley's claimed neuropathy, syncope, or vertigo, I need not consider Medley's related claim that the ALJ's failure to consider these impairments as severe impairments rendered his RFC assessment unsupported by the evidence of record.

D.   Medical Opinion Evidence

On April 20, 2018, Dr. Borrego completed a medical source statement in which he reported that Medley's diagnosed vertigo and neuropathy caused, *inter alia*, fatigue, weakness, unstable walking, sensory disturbances such as numbness or tingling, and balance problems. He opined that Medley could sit for only two hours in an eight-hour workday, stand or walk for a total of less than two hours in an eight-hour workday, needed to take an unscheduled break every thirty minutes, needed to elevate her legs during prolonged sitting, was unable to engage in any postural activity except for occasional twisting, and was unable to engage in any manipulative activity. (Tr. 624-25.) The ALJ gave little weight to Dr. Borrego's statement, reasoning that the extreme limitations were not based on any objective findings and were inconsistent with the evidence of record, including his own treatment notes. (Tr. 28.) The ALJ did not err in this determination.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including

her symptoms, diagnoses, and prognoses; what she can still do despite her impairments; and her physical and mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).[7] The Regulations require that more weight be given to the opinions of treating sources than other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating source has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord

---

[7] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence. For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because the claims under review here were filed before March 27, 2017, I apply the rules set out in 20 C.F.R. §§ 404.1527 and 416.927.

- 14 -

that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the source provides support for their findings, whether other evidence in the record is consistent with the source's findings, and the source's area of specialty. 20 C.F.R. §§ 404.1527(c), 416.927(c). Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. *Goff*, 421 F.3d at 790-91. The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

As discussed above, there is no objective evidence of record that supports a finding that Medley's claimed vertigo and/or neuropathy were medically determinable impairments that caused significant work-related limitations, and Dr. Borrego did not cite to any objective medical evidence to support his opinions. Where a treating source renders a conclusory opinion without reference to medical evidence and with little or no elaboration, an ALJ does not err in according little weight to such an unsupported opinion. *See Hurd v. Astrue*, 621 F.3d 734, 739 (8th Cir. 2010); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

In addition, the ALJ's finding that Dr. Borrego's opined limitations were inconsistent with his own treatment records is supported by substantial evidence on

the record as a whole. Dr. Borrego's treatment records do not report any findings that Medley experienced any of the opined limitations and, indeed, Dr. Borrego's examinations of Medley were essentially normal in all respects. An ALJ does not err when he discounts a treating physician's medical opinion where the opined limitations stand alone and were never mentioned in the physician's numerous records of treatment. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014). *See also Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)).

Accordingly, because the ALJ's reasons to discount Dr. Borrego's medical source statement are supported by substantial evidence on the record as a whole, the ALJ did not err in according only limited weight to the statement. *Julin*, 826 F.3d at 1088.

## Conclusion

When reviewing an adverse decision by the Commissioner, my task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above on the claims raised by Medley on this appeal, a reasonable mind can

find the evidence of record sufficient to support the ALJ's determination. I must therefore affirm the decision. *Id.*

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Lisa R. Medley's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of September, 2019.